# IN THE COURT OF APPEALS OF IOWA

No. 24-0845
Filed October 1, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**VICTORIA LINDA NICHOLE GIBBS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.


        A criminal defendant appeals her convictions for child endangerment without bodily injury. **AFFIRMED.**


        Webb L. Wassmer (argued) of Wassmer Law Office, PLC, Marion, for appellant.

        Brenna Bird, Attorney General, and David Banta (argued), Assistant Attorney General, for appellee.


        Heard at oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

Victoria Gibbs was found guilty of three counts of child endangerment after a jury found she left three children under the age of ten—one of which had special medical needs—alone in her apartment for about five hours. Gibbs argues on appeal that the supreme court's decision *State v. Cole*, 3 N.W.3d 200 (Iowa 2024), requires us to vacate her convictions. We disagree, finding *Cole* distinguishable on multiple bases, including the ages of the children, one child's medical issues, and the length of time the children were left alone. We affirm Gibbs's convictions.

## I.      Background Facts and Proceedings

Cedar Rapids police were dispatched to Gibbs's apartment in October 2021 on a report that her three children—ages nine, seven, and four—had been left alone for an extended period. The seven-year-old is nonverbal and has significant medical needs.

When police arrived at the apartment around 8:00 p.m., they knocked on the door and no one answered. Through the front window, officers saw Gibbs's seven-year-old child[1] "wedged" among blankets and pillows on the couch. They heard another child indoors, pleaded unsuccessfully for the child to open the door, then heard the child lock the door and saw him run upstairs. The officers eventually called the fire department with the plan of forcing entry. Before the fire department could force the door open, a woman the officers had previously observed in the neighboring apartment—Angel Wade—appeared inside, having apparently come in through the back door, and she let police into Gibbs's apartment.

---

[1] Because two of the children share initials, and initials can be confusing in any event, we refer to the children by their ages to protect their privacy.

Inside the apartment, officers observed the seven-year-old child had a feeding tube and saw mucus-suctioning equipment for his mouth and throat nearby. The child was "congested," had a "wet cough," and had "phlegm" in his mouth and nose. His lungs sounded "wet and crackling." He would have "coughing fits"—described as "a couple of consecutive coughs in a row"—and stop breathing for ten or more seconds. And his diaper "was saturated in urine." The other two children were in the upstairs bedrooms, watching TV or a tablet.

Gibbs returned home just after 10:00 p.m.—meaning officers were waiting with her children more than two hours. While they were there, officers spoke to Gibbs by phone, first around 8:45 p.m., when she initially claimed she would be home in less than an hour. During the call, Gibbs was "very escalated and angry," "yelling and swearing," and told police that a neighbor was watching the children.

When she arrived back at the apartment, police described Gibbs as "very confrontational and angry with us that we were there. She tried to say that we kicked her baby-sitter out to try to frame her into getting her in trouble." Gibbs told officers that Wade was supposed to be watching the kids and that Gibbs's cousin was also supposed to come by. Police issued Gibbs a summons based on her promise to appear and the Iowa Department of Health and Human Services (HHS) removed the children the next day.

What happened before officers arrived that night was disputed at trial. Gibbs argued that Wade's paramour, Parris Armstrong, was staying in the apartment and watching the children. In support of this claim, Wade—for the first time at trial—said Armstrong had been watching the kids that night. She did not share that information with police, prosecutors, or HHS investigators in the two

years leading up to trial. And Wade denied that she was supposed to be watching the kids, even though that's what Gibbs told police. Armstrong partially agreed with Wade's testimony; he said he was at Gibbs's apartment but didn't answer the door because he had outstanding warrants. But like Wade, Armstrong didn't tell anyone this before trial. The friend Gibbs was with that evening, Cassandra Welch, also claimed to have seen Armstrong go over to watch the kids—but she, like the others, did not share this information with police or HHS until trial.

Other evidence, including screenshots of messages from Gibbs, supported the State's theory that the children were left alone. Camara Prime testified that Gibbs had video-called her unexpectedly that day at 4:19 p.m. and asked her to go check on the kids two or three times that evening. But Prime never actually went over to the apartment and did not agree to do so before Gibbs left the children alone.[2] Facebook messages corroborated Prime's testimony and the State's theory the children were left alone:

- Gibbs told Prime to call her when Prime got to the apartment, so that Gibbs could call the oldest child and have him let Prime inside.

- Sometime between 4:54 p.m. and 6:28 p.m., Gibbs messaged Prime: "Don't forget.my kids bitch I'm already driving."

- At 8:14 p.m., Gibbs tried to call Prime; when Prime didn't pick up, Gibbs messaged: "Dude where TF are u the police surrounding my shit u bogus as fuck dude call me before u get to my house dude like fr."

- Then Gibbs messaged: "Camara so u gun look and not fucking respond I need to talk to u before u get to my fucking house dude tph."

---

[2] Although ancillary to how we view the issues on appeal, the record indicates Prime was not capable of caring for the children on her own.

- The next day, Gibbs messaged: "Dude dhs tryna take my kids if they contact u please say u came to watch my kids [s]o my neighbor could go to bed and the police came and so I sent u home."

- Later that next day, Gibbs messaged again: "My kids are gone u don't have to answer but if they contact please say what I said fr."

An HHS child protection worker rebutted Gibbs's trial theory and Armstrong, Wade, and Welch's testimony. The HHS worker explained that no one she spoke to contemporaneous with the events—not Gibbs, Wade, or Welch—had mentioned Armstrong, or she would have interviewed him as part of her child-abuse investigation.

The jury resolved the conflicts in the evidence by finding Gibbs guilty as charged on one count of neglect of a dependent person, a class "C" felony in violation of Iowa Code section 726.3 (2021), and three counts of child endangerment without causing bodily injury, aggravated misdemeanors in violation of Iowa Code section 726.6.[3] The court deferred judgment on the felony and imposed suspended consecutive sentences on the misdemeanors. Gibbs appeals, challenging only sufficiency of the evidence for the misdemeanor convictions.

## II.    Standard of Review

We review sufficiency claims for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). A verdict supported by substantial evidence

---

[3] From the trial information through sentencing, the parties and the court cited subsections (1)(a), (3), and (7) of section 726.6. We suspect the trial information erroneously charged Gibbs under the version of the statute in effect for the first half of 2021, rather than the version that took effect as of July 2021. As best we can tell, the appropriate subsections at the time of the offenses and the trial were (1)(a), (4), and (8). Neither party asks us to take any corrective action on this issue, and we discern no prejudice to Gibbs.

binds us. *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

"It is not our place to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury. It is also for the jury to decide which evidence to accept or reject." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (cleaned up).

### III.    Discussion

At Gibbs's trial, each count of child endangerment was marshaled identically other than the child's name. The State had to prove:

1.  On or about the 24th day of October, 2021, the defendant was the parent of [child].

2.  [Child] was under the age of fourteen.

3.  The defendant acted with knowledge that she was creating a substantial risk to [child]'s physical, mental, or emotional health or safety.

These elements track the Code. *See* Iowa Code § 726.6(1)(a).

On appeal, Gibbs only challenges the third element—acting with knowledge to create a substantial risk to the child. Last year, the supreme court analyzed that element and explained,

> [A] parent creates a risk when that risk is clearly outside the range of risks that accompany ordinary life. This requirement is satisfied when the risk results from (1) a parent's independently unlawful behavior, (2) a parent's overtly abusive behavior, or (3) other parent behavior that creates an identifiable risk that falls clearly outside the risks of ordinary life.

*Cole*, 3 N.W.3d at 207. Applying those principles, the court held that a mother did not commit child endangerment when she went grocery shopping some twenty minutes away, leaving children ages five though twelve asleep at home. *See id.* at 207–08. The court emphasized that at least some of the children were old enough to supervise the others, and there were no extraordinary or unusual risks present in the home. *See id.* at 208. And the court made clear it "d[id] not suggest that it is always appropriate or lawful for parents or other caregivers to leave children without adult supervision." *Id.* at 209.

Gibbs argues *Cole* controls here and requires us to vacate her convictions. The State disagrees and distinguishes the facts of this case. We consider each count—one for each child—separately.

*The special-needs seven-year-old.* We consider the child with the feeding tube and unique medical needs first, as he presents a somewhat different factual question. For this child, we have little trouble concluding the risk Gibbs knowingly or recklessly created was extraordinary and sufficient to warrant criminal conviction. Viewing the evidence in the light most favorable to the State, Gibbs was nearly two hours away from home and left the seven-year-old with no adult to attend to his complex medical needs. The police testimony at minimum suggests the child was having difficulty breathing and was unable to fend for himself for a significant portion of the roughly five hours Gibbs left him without adult supervision. There is no evidence the other children in the house were capable of caring for

him—and the child's difficulty breathing when the police arrived suggests they were not.  The jury's verdict is supported by substantial evidence.[4]

*The nine-year-old*.  The nine-year-old raises perhaps a closer question.  We recognize that, in *Cole*, our supreme court cited outside-the-record evidence for the proposition that nine-year-olds have historically been trusted to walk to school without supervision.  3 N.W.3d at 208.  Even taking such an observation at face value, we think walking to school is a far cry from being left to provide comprehensive care for a seven-year-old sibling with special medical needs and another four-year-old sibling.  Both the plain language of the statute and our cases recognize that convictions for child endangerment can be grounded in the risk of mental and emotional—in additional to physical—injuries.  *See* Iowa Code § 726.6(1)(a); *State v. Tewes*, No. 20-0990, 2021 WL 4304240, at *3 (Iowa Ct. App. Sept. 22, 2021).  And the risk Gibbs created by abandoning the children for some five hours, functionally leaving the nine-year-old responsible for all of them, far exceeded the ordinary risk to these children.

For example, the record establishes that even the adult neighbors and the police officers had some hesitation about using the specialized medical equipment to suction the seven-year-old's mucus.  And there is no indication the nine-year-old had any training with that apparatus or his brother's feeding tube.  And perhaps most telling, Gibbs herself recognized that she could not safely leave the children

---

[4] The State on appeal additionally argues that, because abandonment of the special-needs seven-year-old independently violated section 726.3, it is a per se act of child endangerment.  We understand why the State argues this, based on the supreme court's language in *Cole*.  *See* 3 N.W.3d at 205–06.  But, because we find the facts support a child-endangerment conviction without reference to any independently unlawful act, we decline to rest our holding solely on this ground.

home alone, as evidenced by her attempts to arrange care for the children, her frantic follow-ups with Prime when she did not go to the apartment, and her attempt to convince Prime to lie and tell HHS and police she watched the kids when she didn't. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against [her] is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid [her] defense."). We cannot say as a matter of law the record lacks substantial evidence for the count related to the nine-year-old, so we must affirm.

*The four-year-old*. As for the youngest child, we conclude the jury reasonably found that leaving a four-year-old without adult supervision for five hours created an extraordinary risk sufficient to warrant conviction, for many of the reasons we have already discussed. The law did not require the State to prove the four-year-old or her siblings actually suffered injury, but rather the crime requires substantial evidence of the "defendant's knowledge that the children were in a position of substantial risk." *State v. Millsap*, 704 N.W.2d 426, 431 (Iowa 2005). While perhaps we can conceive of different facts that could warrant acquittal—like a preschooler being left alone for a few minutes rather than five hours, or being left with a teenage sibling instead of a nine-year-old—we think the evidence here was sufficient to generate a fact question for the jury on Gibbs's knowledge. And in our criminal justice system, jurors representative of the community's common sense are best suited to resolve these questions—not appellate judges reviewing a cold record.

**AFFIRMED.**